[No. B231194. Second Dist., Div. Three. Jan. 31, 2013.]

SOFIA AGUAYO, Plaintiff, Cross-defendant and Appellant, v. MICHELLE AMARO, as Special Administrator, etc., Defendant, Cross-complainant and Respondent.

1104

---

**COUNSEL**

Ronald E. Wiksell; Law Offices of James T. Duff and James T. Duff for Plaintiff, Cross-defendant and Appellant.

Kenneth G. Campion for Defendant, Cross-complainant and Respondent.

OPINION

KITCHING, J.—

## INTRODUCTION

Sofia Aguayo appeals a judgment against her and in favor of Michelle Amaro, the special administrator of the estate of Isabel Infante. Sofia[1] and Amaro both sought to quiet title to real property located at 3665 Gillig Avenue in Los Angeles (the property). After a bench trial, the court determined that the property belonged to the estate on the ground that Sofia was barred from asserting adverse possession of the property under the doctrine of unclean hands.

The primary issues on appeal are whether unclean hands can serve as a defense to adverse possession by claim of right and, if so, whether the trial court abused its discretion in applying the defense in this case. We shall conclude that the trial court has discretion to apply the defense of unclean hands when a party claiming adverse possession engages in deceitful interference with the true owner's ability to defeat the claim, and that the trial court did not abuse its discretion here.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. *The Infante Family Home*

Herman Infante and Isabel Infante acquired the property by grant deed in 1946. The property served as the family home for Herman and Isabel and their two children, Alfred Infante and Richard Infante. Richard's biological daughter, Michelle Amaro, was raised on the property until she was adopted by a different family when she was nine years old. According to Amaro, she was adopted because her father Richard was a heroin addict who could not take care of her.

Herman passed away in 1969. Isabel died intestate in 1993. After their parents died, Alfred and Richard continued to reside at the property, though probate proceedings regarding the estate of Isabel Infante did not commence for many years.

---

[1] We refer to certain individuals in this case by their first names for the sake of clarity and not out of disrespect to the individuals.

## 2. *Jesus and Sofia Aguayo's Efforts to Take the Property Through Adverse Possession*

Sofia's husband, Jesus Duran Aguayo, claims he is in the "business" of acquiring properties by adverse possession. He contends he has filed about 10 actions seeking to quiet title on real property through adverse possession. Jesus has acquired an expertise in the practice. Working with Jesus, Sofia is engaged in the same occupation.

In 1995, Sofia sent a letter addressed to Isabel Infante at 3665 Gillig Avenue in Los Angeles, inquiring whether she could purchase the property. Isabel was deceased at the time.

Sofia contends that Alfred responded to the letter and engaged in discussions with Jesus regarding the sale of Alfred's contingent interest in the property. She further contends that Alfred orally agreed he would sell his interest for $25,000. In July 1995, Jesus allegedly gave Alfred $2,000 cash in exchange for Alfred's promise to commence probate proceedings. Alfred, however, did not commence such proceedings. In 2001, Alfred died intestate.

On January 2, 1999, Jesus placed a sign on the property stating, "No Trespassing." The sign also indicated that Sofia was the "owner" of the property. Jesus and Sofia also allegedly changed the locks to the front door of the house, placed a fence around the property, and made electrical, plumbing and drywall repairs.

On April 24, 1999, Jesus allegedly loaned $2,000 cash to Richard. The loan was allegedly memorialized with a handwritten document signed by Richard (loan agreement).

On January 1, 2000, "Jesus Aguayo" and Richard allegedly entered into a written agreement entitled "Part Sale & Rental Agreement" (sale and rental agreement). Under this agreement, drafted by Jesus, Richard rented the property from Jesus for $400 a month.[2] The sale and rental agreement further allegedly provided that Richard would "transfer" his rights to the property in exchange for the $2,000 in cash he was given on April 24, 1999, and 54 months of future rent ($21,600), for a total of $23,600.

From 1999 to 2004, Richard resided at the property, except for numerous stints in the county jail. During this time period, Jesus and Sofia maintained their "No Trespassing" sign. Jesus visited the property on a weekly basis.

---

[2] The record does not indicate why Richard would rent the property *from Jesus* at a time when the property belonged to the estate of Isabel Infante.

### 3. *The Aguayos Record a Wild Deed and Pay Property Taxes*

On April 27, 2000, Jesus and Sofia recorded a quitclaim deed (the quitclaim deed) which purported to transfer the property from "Jesus Duran" to Jesus Aguayo and Sofia Aguayo. This was a wild deed because it was recorded outside the chain of title. (*Far West Savings & Loan Assn. v. McLaughlin* (1988) 201 Cal.App.3d 67, 73 [246 Cal.Rptr. 872].)

The quitclaim deed stated that tax statements should be mailed to Sofia Aguayo, P.O. Box 39965, Downey, CA 90239. After the deed was recorded, the Los Angeles County Registrar-Recorder/County Clerk's office mailed all tax bills to Sofia's post office box in Downey. Members of the Infante family did not have access to this post office box. Sofia paid all tax bills due from 2000 through 2006, as well as back taxes due from 1993 through 1999.

### 4. *Pleadings in the Civil Action*

On August 9, 2004, Sofia filed a verified complaint to quiet title to the property. (*Aguayo v. Infante* (Super. Ct. L.A. County, 2010, No. BC319770) (the civil action).) The complaint sought a judgment that the property belonged to Sofia under the doctrine of adverse possession. Amaro, as special administrator of the estate of Isabel Infante, filed a cross-complaint against Sofia and Jesus for quiet title and other causes of action she did not pursue at trial.[3]

### 5. *Trial*

On August 17, 2006, the superior court held a bench trial on the competing quiet title causes of action of Sofia and Amaro. Pursuant to the parties' stipulation, the trial court adjudicated the dispute over the ownership of the property in both the civil action and probate action.

Only two witnesses were called at trial: Jesus and Amaro. At the end of trial, the court took the matter under submission.

### 6. *Statement of Decision*

On November 20, 2006, the trial court issued its statement of decision. The court found, inter alia, that Sofia took possession of the property by claim of right and color of title. We shall discuss both kinds of adverse possession

---

[3] On or about November 23, 2004, Richard assigned his interest in the property to Amaro. On November 24, 2004, Amaro was appointed special administrator in *Estate of Infante* (Super. Ct. L.A. County, 2010, No. BP089151) (the probate action).

*post.* The court further found that although Sofia met the "technical requirements" of adverse possession, her quiet title action "must fail as she proceeded with unclean hands in asserting her adverse interest in this property."

The court based its ruling on Amaro's unclean hands defense on Sofia's act of recording the quitclaim deed. The court stated: "The evidence at trial showed that recording of a 'wild deed' caused the property tax bills to be sent to the Aguayos and not the legal owner. The court is convinced that this 'wild deed' was recorded to insure the legal owners would not receive tax bills and thereby be reminded that property taxes were due." Additionally, the court found that "[t]he act of diverting property tax bills from the true owner was a deceitful act intended to insure the legal owner would not pay their property taxes and also appears to be a criminal act per Penal Code section 115.5."

### 7. *Criminal Proceedings Against the Aguayos*

Pursuant to Sofia's request, we take judicial notice of certain documents in *People v. Aguayo* (Super. Ct. L.A. County, 2008, No. BA320295) (the criminal action). (Evid. Code, §§ 452, subd. (d), 453, 459.) On October 26, 2006, Jesus and Sofia were indicted on 22 counts for conduct associated with their adverse possession "business." The Aguayos were charged with grand theft of personal property, burglary, filing false or forged instruments, forgery, vandalism, unauthorized entry of a dwelling house, theft from an elder or dependent adult, and conspiracy to commit crime. There were numerous alleged victims of their alleged crimes, including Richard Infante.

Seven of the counts related to the property which is the subject of this appeal. Count 7 charged Jesus and Sofia with filing a false or forged document, namely the quitclaim deed, in violation of Penal Code section 115, subdivision (a). On March 29, 2007—after the statement of decision in the civil action and probate action was entered—the superior court dismissed count 7 in the criminal action on the grounds the People presented misleading arguments and instructions to the grand jury.[4]

---

[4] On August 15, 2008, the jury convicted Jesus and Sofia of, inter alia, vandalizing the subject property (Pen. Code, § 594, subd. (a)), entering the subject property without authorization (Pen. Code, § 602.5, subd. (a)), and conspiracy to commit a crime (Pen. Code, § 182, subd. (a)(1)). The jury, however, acquitted Jesus and Sofia of forgery in connection with the sale and rental agreement and the loan agreement. The Aguayos' convictions were affirmed on appeal. (*People v. Aguayo* (June 10, 2010, B212334) [nonpub. opn.].)

### 8. *Judgment and Appeal*

On December 7, 2010, the trial court entered judgment in the civil action and the probate action.[5] The judgment stated that the property was owned by the estate of Isabel Infante. Sofia filed a timely notice of appeal.

### CONTENTIONS

Sofia makes two main arguments on appeal. She first contends the trial court erroneously ruled that the doctrine of unclean hands applies to defeat a quiet title cause of action based on adverse possession by claim of right. Unclean hands, Sofia argues, is "unavailable" as a defense to this cause of action. Alternatively, assuming the defense is available, Sofia argues the trial court abused its discretion in applying the defense of unclean hands under the facts of this case.

Amaro does not argue that the trial court erroneously found that Sofia satisfied all of the requirements of adverse possession. The issue of whether all of the elements of adverse possession were satisfied was not briefed and is not before us. Accordingly, except as otherwise stated, we assume for purposes of this appeal that the requirements of adverse possession were satisfied.

### DISCUSSION

### 1. *Standard of Review*

We review the trial court's decision to apply Amaro's unclean hands defense for abuse of discretion. (*Farahani v. San Diego Community College Dist.* (2009) 175 Cal.App.4th 1486, 1495 [96 Cal.Rptr.3d 900] (*Farahani*).) We review the trial court's factual findings under the substantial evidence test. (*Fladeboe v. American Isuzu Motors Inc.* (2007) 150 Cal.App.4th 42, 56 [58 Cal.Rptr.3d 225].) "We presume the trial court's factual findings are supported by the evidence, and it is the appellant's burden to show that they are not." (*Estates of Collins & Flowers* (2012) 205 Cal.App.4th 1238, 1246 [141 Cal.Rptr.3d 227].)

### 2. *The Defense of Unclean Hands*

A quiet title action is equitable in nature except when it takes on the character of an ejectment proceeding to recover possession of real property.

---

[5] The record does not indicate why the trial court waited more than four years after it entered its statement of decision to enter its judgment.

(*Estate of Phelps* (1990) 223 Cal.App.3d 332, 340 [273 Cal.Rptr. 2].) In this case, neither party sought possession of the property under an ejectment theory. The trial court therefore adjudicated the matter as a chancellor in equity.

■ The doctrine of unclean hands is a defense to an equitable action, including an action to quiet title. (*Estates of Collins & Flowers, supra,* 205 Cal.App.4th at pp. 1247–1248.) It rests on the maxim that " ' "he who comes into equity must come with clean hands." ' " (*Farahani, supra,* 175 Cal.App.4th at p. 1495.) "The doctrine demands that a plaintiff act fairly in the matter for which he seeks a remedy. He must come into court with clean hands, and keep them clean, or he will be denied relief, regardless of the merits of his claim." (*Kendall-Jackson Winery, Ltd. v. Superior Court* (1999) 76 Cal.App.4th 970, 978 [90 Cal.Rptr.2d 743] (*Kendall-Jackson*).) Whether the doctrine of unclean hands applies is a question of fact. (*Ibid.*)

■ Not all wrongful conduct constitutes unclean hands. Only if the misconduct is directly related to the cause at issue can a defendant invoke the doctrine. (*Kendall-Jackson, supra,* 76 Cal.App.4th at p. 979; accord, *Farahani, supra,* 175 Cal.App.4th at p. 1495 [the conduct must be relative to the matter in which the plaintiff seeks relief].) The misconduct, however, "need not be a crime or an actionable tort. Any conduct that violates conscience, or good faith, or other equitable standards of conduct is sufficient cause to invoke the doctrine." (*Kendall-Jackson,* at p. 979; accord, *Estates of Collins & Flowers, supra,* 205 Cal.App.4th at p. 1248 [" 'Unconscientious conduct in the transaction may give rise to the defense.' "].) "Whether the defense applies in particular circumstances depends on the analogous case law, the nature of the misconduct, and the relationship of the misconduct to the claimed injuries." (*Dickson, Carlson & Campillo v. Pole* (2000) 83 Cal.App.4th 436, 447 [99 Cal.Rptr.2d 678].)

### 3. *Unclean Hands May Be a Defense to Adverse Possession by Claim of Right*

■ The elements of adverse possession are as follows: "(1) Possession must be by actual occupation under such circumstances as to constitute reasonable notice to the owner. (2) It must be hostile to the owner's title. (3) The holder must claim the property as his own, *under either color of title or claim of right.* (4) Possession must be continuous and uninterrupted for five years. (5) The holder must pay all the taxes levied and assessed upon the property during the period." (*Dimmick v. Dimmick* (1962) 58 Cal.2d 417, 421 [24 Cal.Rptr. 856, 374 P.2d 824], italics added.)

■ Adverse possession under color of title is based on a written instrument, judgment, or decree which purports to convey real property but is for

some reason defective. (*Estate of Williams* (1977) 73 Cal.App.3d 141, 147 [140 Cal.Rptr. 593] (*Williams*); *Safwenberg v. Marquez* (1975) 50 Cal.App.3d 301, 309 [123 Cal.Rptr. 405] (*Safwenberg*).) Adverse possession under color of title is codified by Code of Civil Procedure sections 322 and 323.[6] (See *Sorensen v. Costa* (1948) 32 Cal.2d 453, 458 [196 P.2d 900] (*Sorensen*).) "The good faith of the occupant, in relying on a defective instrument, is a crucial element to establishing adverse possession based upon color of title." (*Williams*, at p. 147.)

■ "Adverse possession under a claim of right is not founded on a written instrument, judgment or decree." (*Safwenberg, supra*, 50 Cal.App.3d at p. 309.) Claim of right adverse possession is codified by sections 324 and 325.[7] (Cf. *Sorensen, supra*, 32 Cal.2d at p. 458.) There is no good faith requirement for adverse possession based on a claim of right. (See *Safwenberg*, at pp. 309–310; *Buic v. Buic* (1992) 5 Cal.App.4th 1600, 1604 [7 Cal.Rptr.2d 738].) A claim of right can be founded on either a deliberate trespass, or a mistake if the claimant intends to claim the area occupied as his or her land. (*Safwenberg*, at p. 310.)

---

[6] Except as otherwise stated, all future statutory references are to the Code of Civil Procedure. Section 322 provides: "When it appears that the occupant, or those under whom he claims, entered into the possession of the property under claim of title, exclusive of other right, founding such claim upon a written instrument, as being a conveyance of the property in question, or upon the decree or judgment of a competent court, and that there has been a continued occupation and possession of the property included in such instrument, decree, or judgment, or of some part of the property, under such claim, for five years, the property so included is deemed to have been held adversely . . . ." Section 323 describes what constitutes adverse possession by any person claiming a title founded upon a written instrument, judgment or decree.

[7] Section 324 provides: "Where it appears that there has been an actual continued occupation of land, under a claim of title, exclusive of any other right, but not founded upon a written instrument, judgment, or decree, the land so actually occupied, and no other, is deemed to have been held adversely." Section 325, subdivision (a) provides: "For the purpose of constituting an adverse possession by a person claiming title, not founded upon a written instrument, judgment, or decree, land is deemed to have been possessed and occupied in the following cases only: [¶] (1) Where it has been protected by a substantial enclosure. [¶] (2) Where it has been usually cultivated or improved." Section 325, subdivision (b), which applies to both color of title and claim of right adverse possession, provides: "In no case shall adverse possession be considered established under the provision of any section of this code, unless it shall be shown that the land has been occupied and claimed for the period of five years continuously, and the party or persons, their predecessors and grantors, have timely paid all state, county, or municipal taxes that have been levied and assessed upon the land for the period of five years during which the land has been occupied and claimed. Payment of those taxes by the party or persons, their predecessors and grantors shall be established by certified records of the county tax collector."

Sofia argues that because adverse possession under claim of right necessarily involves the wrongful occupancy of real property, unclean hands cannot be asserted as a defense to adverse possession as a matter of law. We disagree.

█ It is correct that the wrongful act of trespass cannot be the basis for an unclean hands defense to adverse possession by claim of right. This is because if such a defense existed, adverse possession by claim of right would not be possible. (*Brown v. Berman* (1962) 203 Cal.App.2d 327, 329–330 [21 Cal.Rptr. 401] (*Brown*).)

In *Brown*, the plaintiff sought to quiet title to land pursuant to adverse possession based on a claim of right. The defendant argued "that the clean hands doctrine bars recovery by a plaintiff who is a mere trespasser or intruder." (*Brown, supra*, 203 Cal.App.2d at p. 329.) The court, however, rejected the defendant's argument and held: "This contention overlooks the fact that title by adverse possession is not limited to those who claim under color of title, but is available also to those who merely make a claim of right [citation]. One entering under a claim of right is a mere intruder or trespasser [citation], without any bona fide belief in his title [citation]. To hold that one who meets the stringent possession requirements of section 325 cannot gain any prescriptive title under mere claim of right would defeat entirely the application of adverse possession to all save those claiming under color of title. No authority is cited for defendant's contention. Obviously none can be, since it is the antithesis of the historical doctrine which permits one who takes by 'bow and spear,' and defends against all comers, to acquire title on expiration of the statutory period." (*Id.* at pp. 329–330.)

The present case is distinguishable from *Brown* because the basis for Amaro's unclean hands defense was not Sofia's trespass on the property. Rather, it was her deceitful act of recording a wild deed for the purpose of diverting tax bills to her address.

█ The trial court found that the sole purpose of recording the wild deed was to interfere with the true owner's payment of property taxes. Had the true owner paid the property taxes, Sofia would not have satisfied one of the five elements of adverse possession. There was substantial evidence supporting the trial court's finding, including evidence that Sofia and Jesus were sophisticated parties knowledgeable about the requirements of adverse possession, and Jesus's failure to provide a credible explanation for the wild deed and the use of the name "Jesus Duran" as the grantor on the deed. We hold that where, as here, a party claiming adverse possession engages in deceitful interference with the true owner's ability to defeat the claim, the trial court may in its discretion apply the defense of unclean hands.

Sofia's reliance on *Le Fevre v. Borwick* (1953) 116 Cal.App.2d 786 [254 P.2d 626] (*Le Fevre*) is misplaced. In *Le Fevre*, the court rejected the defendants' unclean hands defense because there was no evidence that the plaintiffs acted inequitably toward them. (*Id.* at pp. 789–790.) The same is not true here. *Le Fevre* is thus distinguishable from this case.

Sofia also cites *Treager v. Friedman* (1947) 79 Cal.App.2d 151 [179 P.2d 387] (*Treager*). In *Treager*, a property owner, Dr. Friedman, recorded a fraudulent deed of trust in favor of the plaintiffs in order to protect the property against claims by third party creditors. (*Id.* at pp. 156–157.) The defendant, Dr. Friedman's wife, purchased the property at a foreclosure sale. (*Id.* at pp. 162–163.) Subsequently, the defendant sought to quiet title to the property pursuant to adverse possession. The plaintiffs argued that the defendant's claim was barred under the doctrine of unclean hands. (*Id.* at p. 173.) The court, however, rejected this argument on the ground that Dr. Friedman's original fraudulent transactions did not directly relate to the defendant's adverse possession claim. (*Ibid.*)

The present case is distinguishable from *Treager*. Sofia's wrongful conduct related directly to her adverse possession claim. By filing a wild deed with the intention of diverting tax bills away from the true owner of the property, Sofia managed to satisfy one of the essential elements of adverse possession, namely paying all of the taxes due on the property for the period of five years during which the land had been occupied and claimed. (§ 325, subd. (b).)

4. *The Trial Court Did Not Abuse Its Discretion in Applying Unclean Hands in This Case*

■ We hold that the trial court did not abuse its discretion by ruling that the doctrine of unclean hands barred Sofia's adverse possession claim. The court found that Jesus and Sofia knew the quitclaim deed was "false" because "Jesus Duran" did not have "title to or ownership of the property to transfer on April 27, 2000." The court further found that Jesus and Sofia, as individuals knowledgeable about adverse possession, knew they did not need to record the quitclaim deed in order to satisfy the requirements of adverse possession, and that they recorded that wild deed for the sole purpose of diverting the tax bills away from the true owner of the property. This is the kind of bad faith, unconscionable conduct that a trial court, sitting as a court of equity, can reasonably conclude is sufficient to invoke the doctrine of unclean hands. (See *Estates of Collins & Flowers, supra,* 205 Cal.App.4th at p. 1242 [unclean hands doctrine barred a party from challenging a forged deed]; *DeRosa v. Transamerica Title Ins. Co.* (1989) 213 Cal.App.3d 1390, 1396–1397 [262 Cal.Rptr. 370] [plaintiff who accepted title to property in order to permit the true owner to defraud his creditors was barred by the

unclean hands doctrine from maintaining a malicious prosecution action against a title insurance company]; *Potter v. Boisvert* (1953) 117 Cal.App.2d 688, 690 [256 P.2d 625] [plaintiff who placed title to real property in a third party's name in order to avoid the possible loss of the property to his wife was barred by the unclean hands doctrine from claiming an interest in the property].)

 In addition to finding that Sofia committed a "deceitful act" by recording the quitclaim deed, the trial court also noted that this conduct "appears to be a criminal act per Penal Code section 115.5."[8] Sofia argues that because she was acquitted of violating Penal Code section 115 in the criminal action, the trial court erroneously concluded she committed a crime. Whether Sofia violated Penal Code section 115 or the related statute, Penal Code section 115.5, however, is not relevant to our analysis because the wrongful act which constitutes unclean hands need not be a crime, or even an actionable tort.[9] (*Kendall-Jackson, supra,* 76 Cal.App.4th at p. 979.)

Sofia argues that because the trial court found in its statement of decision that she took possession of the property under color of title, we must imply that it also found she acted in good faith. This implied finding, Sofia contends, precludes a finding of unclean hands. We reject this argument.

It is true that the trial court's finding that Sofia took possession under color of title appears to contradict its finding that she acted in bad faith because good faith is a requirement of adverse possession under color of title. But this ostensible contradiction is not a ground to reverse the judgment. At most, it indicates the trial court may have misunderstood the elements of color of title in Sofia's favor.[10]

---

[8] Penal Code section 115.5, subdivision (a) provides in part: "Every person who files any false or forged document or instrument with the county recorder which affects title to . . . real property consisting of a single-family residence . . . with knowledge that the document is false or forged, is punishable, in addition to any other punishment, by a fine not exceeding seventy-five thousand dollars ($75,000)." This statute is "a more specific application of the general statute (§ 115) and the purposes behind both statutes are the same—namely, to preserve the integrity and reliability of public documents." (*People v. Gangemi* (1993) 13 Cal.App.4th 1790, 1795–1796 [17 Cal.Rptr.2d 462].)

[9] A *prior* acquittal in a criminal proceeding does not have res judicata effect in a civil proceeding in light of the different standards of proof. (*In re Coughlin* (1976) 16 Cal.3d 52, 58 [127 Cal.Rptr. 337, 545 P.2d 249].) A fortiori, Sofia's *subsequent* acquittal in the criminal action had no effect on the trial court's findings in the civil action and probate action.

[10] The only document that could have possibly served as the basis for Sofia's color of title claim was the quitclaim deed. This deed purported to transfer title from "Jesus Duran" to Sofia and Jesus Aguayo. Sofia contends that "Jesus Duran" acquired title to the property pursuant to the sale and rental agreement. There was substantial evidence, however, from which the trial court could have concluded that Sofia did not in good faith believe the quitclaim deed transferred title to her. The sale and rental agreement did *not* transfer Richard's contingent

A judgment is presumed correct and all presumptions are indulged to support it on matters as to which the record is silent. (*Yu v. University of La Verne* (2011) 196 Cal.App.4th 779, 787 [126 Cal.Rptr.3d 763].) Because we review the correctness of the judgment, and not the court's reasons, we must affirm the judgment if it can be supported on any legal theory, even if the trial court misapplied or misunderstood the law. (*Hoover v. American Income Life Ins. Co.* (2012) 206 Cal.App.4th 1193, 1201 [142 Cal.Rptr.3d 312].)

Nowhere in its statement of decision did the trial court expressly find that Sofia and Jesus acted in good faith. Instead, the court stated that the Aguayos' act of recording a wild deed was conduct "beyond . . . bad faith" and, in fact, was "criminal in nature." In light of the court's express findings and the rule that all presumptions are indulged in support of the judgment, we cannot imply the trial court made a finding that Sofia acted in good faith.

## DISPOSITION

The judgment is affirmed. Respondent Michelle Amaro is awarded costs on appeal.

Klein, P. J., and Aldrich, J., concurred.

A petition for a rehearing was denied February 22, 2013.

.

---

interest in the property to "Jesus Duran"; it purported to transfer Richard's interest, if any, to Jesus Aguayo. Jesus conceded at trial that his legal name was not Jesus Duran. Moreover, the sale and rental agreement on its face appears to have unconscionable terms. Jesus purportedly acquired a house in the City of Los Angeles for the astonishingly low price of $2,000, plus 54 months of rent forbearance. Further, the document itself is highly suspicious. It consists primarily of a printed rental agreement form. On the side of the agreement, in Jesus's handwriting, it states: "I Richard Infante, transfer, all of my rights, titles, & interest to: Jesus & Sofia Aguayo, in consideration [of] $2,000 given on 4-24-99 & credit of 54 months of rent, total $23,600.00." This written statement was not dated or initialed or signed by Richard.