Filed 6/17/15 Unmodified opinion attached

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| LILLI SHOEN, | B254487 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC486560) |
| v. | |
| JULIET ZACARIAS, | ORDER MODIFYING OPINION AND DENYING REHEARING |
| Defendant and Respondent. | NO CHANGE IN JUDGMENT |

THE COURT:*

It is ordered that the opinion filed herein on May 22, 2015, be modified as follows:

1.  On page 3, the second paragraph, line 15, the following sentence is inserted after the sentence ending in "yard.":

> The court alternatively ruled that it would grant an equitable easement independently of these considerations based on its own, unfettered view of "whatever it deems important . . . in determining how the equities are to be balanced."

2.  On page 4, the first paragraph, line 6, the following words are inserted after the number "576.":

> (*Warsaw*).)  Unless all three prerequisites are established, a court lacks the discretion to grant an equitable easement. (*Warsaw*, at p. 576 [so noting]; *Brown*

---

*     BOREN, P. J.          ASHMANN-GERST, J.          HOFFSTADT, J.

*Derby Hollywood Corp. v. Hatton* (1964) 61 Cal.2d 855, 858 [same] (*Brown Derby*); see also *Tashakori*, at p. 1009 [all three "must be present"].)  Contrary to the trial court's suggestion, the equitable nature of this doctrine does not give a court license to grant easements on the basis of "whatever [a court] deems important," even when these prerequisites are absent.

3. On page 4, the second paragraph, line 6, the following sentence is inserted after the sentence ending in "trespasser.":

These labels also suggest that the conveniences or hardships between the trespasser and property owner start out in equipoise, when the doctrine actually requires that they begin tipped in favor of the property owner due to the owner's substantial interest in exclusive use of her property arising solely from her ownership of her land.

4. On page 4, the second paragraph, in the sentence beginning "What is more," the words "presumptively heavy hardship the" are inserted between the words "the" and "owner"; and the word "suffer" is inserted between the words "will" and "from" so that the sentence reads:

What is more, there are good reasons to require the trespasser seeking an equitable easement to prove that she will suffer a *greatly disproportionate* hardship from denial of the easement than the presumptively heavy hardship the owner will suffer from its grant.

5. On page 4, the third paragraph, line 11, the case citation beginning with "*Brown Derby*" is deleted, and the following citation is inserted in its place:

*Brown Derby*, *supra*, 61 Cal.2d at p. 858

6. On page 5, the first full paragraph, line 9, the sentence beginning "It also explains" is deleted, and the following sentences are inserted in its place:

It explains why additional weight is given to the owner's loss of the exclusive use of the property arising from her ownership, independent of any hardship caused by the owner's loss of specific uses in a given case.  And it elucidates why there must be a showing that the hardship on the trespasser be greatly disproportionate to these hardships on the owner.

7. On page 6, the first paragraph, line 7, the following sentence is inserted after the sentence ending in "from its use.":

2

It also prevents equitable easements from becoming a means of obtaining an adverse easement without having to satisfy the more onerous requirements of prescriptive easements, including the requirement of five years of adverse use. (*Pulido v. Pereira* (2015) 234 Cal.App.4th 1246, 1250 (*Pulido*); see also *Brandwein v. Butler* (2013) 218 Cal.App.4th 1485, 1501 [courts are reluctant to interpret a doctrine in a way that nullifies other doctrines].)

8.  On page 6, the first full paragraph, line 9, the following sentence is inserted before the sentence beginning "On these facts":

We also reject Zacarias's suggestion that Shoen's allegedly harassing conduct is itself a greatly disproportionate hardship; the equitable easement doctrine is not a tool for penalizing unneighborly conduct through the reassignment of property interests.

9.  On page 6, the second full paragraph, the case citation beginning with "Pulido" is deleted, and the following citation is inserted in its place:

(*Pulido*, *supra*, 234 Cal.App.4th at p. 1250.)

There is no change in the judgment.

Respondent's petition for rehearing is denied.

**CERTIFIED FOR PUBLICATION.**

Filed 5/22/15 Unmodified opinion

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| LILLI SHOEN, | B254487 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC486560) |
| v. | |
| JULIET ZACARIAS, | |
| Defendant and Respondent. | |

APPEAL from judgment of the Superior Court of Los Angeles County. Soussan G. Bruguera, Judge. Reversed and remanded.

Haight Brown & Bonesteel, Jules S. Zeman; Goodkin & Lynch, Dan Goodkin for Plaintiff and Appellant.

Ervin Cohen & Jessup, Allan B. Cooper and Pantea Yashar for Defendant and Respondent.

\* \* \* \* \* \*

A trial court has the power to issue an equitable easement authorizing a trespasser to continue her trespass in exchange for paying damages, but only if, among other things, the hardship on the trespasser in ceasing the trespass is "greatly disproportionate" to the hardship on the land's owner in losing use of the trespassed-upon portion of her land. (E.g., *Tashakori v. Lakis* (2011) 196 Cal.App.4th 1003, 1009-1012 (*Tashakori*); *Christensen v. Tucker* (1952) 114 Cal.App.2d 554, 560-563 (*Christensen*).) Here, we address what constitutes a "greatly disproportionate" hardship, and conclude that a trespasser's hardship in having to remove her portable patio furniture does not qualify. We accordingly reverse the trial court's issuance of an equitable easement, and remand for further proceedings.

## FACTS AND PROCEDURAL HISTORY

Plaintiff Lilli Shoen (Shoen) and defendant Juliet Zacarias (Zacarias) are neighbors. Shoen and Zacarias own adjacent parcels on a hillside. Situated between them is a relatively flat patch of land a little more than 500 square feet in area. It is undisputed that most of the patch (approximately 481 square feet) is part of Shoen's property. However, as a practical matter, the patch is accessible only from Zacarias's property by a staircase built before she bought her property; the patch is not easily accessible from Shoen's property given the slope and the fact that a hillside staircase currently on Shoen's property does not connect to the patch.

When Zacarias purchased the property in 2003, she thought the patch was on her property and populated it with outdoor furniture—a cabana, a chaise chair, tables, and stools; none of it is set in concrete. In 2005, the prior owner of Shoen's land surveyed the boundaries and discovered that the patch belonged to him, but told Zacarias she could continue to use it for as long as he owned the property. A year later, Shoen's father bought the property and deeded it to Shoen around 2012. Shoen and her father learned of Zacarias's use of the property in 2006, but said nothing about it until 2011, when Shoen communicated—orally and later in writing—her demand that Zacarias remove the furniture.

When Zacarias refused, Shoen sued for damages, as well as injunctive and declaratory relief, on theories of (1) trespass, (2) nuisance, (3) ejectment, and (4) negligence. Zacarias asserted, as an affirmative defense, that she was entitled to an equitable easement, and also counter-sued Shoen for damages and injunctive relief on theories of (1) prescriptive easement and (2) nuisance. The trial court bifurcated the matter, litigating the matter of the equitable easement first.

Following an 8-day trial, the court issued a 17-page order declaring that Zacarias was entitled to an exclusive, 15-year equitable easement over the patch of land contingent upon payment of $5,000 to Shoen. The court found that Zacarias's initial occupation of the patch was innocent; that Shoen would not suffer irreparable injury if Zacarias were allowed to keep using the patch; and that the balance of equities favored Zacarias. With respect to the balance of equities, the court found that Shoen was unlikely to be harmed by Zacarias's exclusive use of the patch because it would cost Shoen at least $100,000 to build a staircase that accesses the patch, and because Shoen "has adequate space, land and other areas of her property to do the things [sit, read, have a cup of coffee, or plant a garden] she professes she wants to do on the" patch. On the other side of the balance, the court found the hardship to Zacarias to be greater because it would cost Zacarias $275 to remove her patio furniture; her staircase would then lead to a patch she cannot effectively use; and Shoen's intention to build a wall on her property would minimize Zacarias's hillside view, reduce the natural light into her home, and somehow shrink the usefulness of other parts of Zacarias's yard. The court found that its grant of the equitable easement obviated all remaining issues, and entered judgment.

Shoen timely appealed.

## DISCUSSION

For well over 75 years, the California courts have had the discretionary authority to deny a landowner's request to eject a trespasser and instead force the landowner to accept damages as compensation for the judicial creation of an easement over the trespassed-upon property in the trespasser's favor, provided that the trespasser shows that (1) her trespass was "'innocent'" rather than "'willful or negligent,'" (2) the public or the

3

property owner will not be "'"irreparabl[y] injur[ed]"'" by the easement, and (3) the hardship to the trespasser from having to cease the trespass is "'"greatly disproportionate to the hardship caused [the owner] by the continuance of the encroachment."'" (*Tashakori*, *supra*, 196 Cal.App.4th at p. 1009; *Linthicum v. Butterfield* (2009) 175 Cal.App.4th 259, 265 (*Linthicum*); *Christensen*, *supra*, 114 Cal.App.2d at pp. 559, 562-563; *Warsaw v. Chicago Metallic Ceilings, Inc.* (1984) 35 Cal.3d 564, 576. We review the trial court's application of this doctrine for an abuse of discretion. (*Tashakori*, at p. 1008.)

Although the equitable easement doctrine is sometimes called the doctrine of "balancing of conveniences" or the doctrine of "relative hardships" (*Linthicum*, *supra*, 175 Cal.App.4th at p. 265), these labels are somewhat misleading. These labels suggest that an equitable easement may issue if the conveniences or hardships merely favor the trespasser, when the doctrine actually requires that they tip disproportionately in favor of the trespasser. What is more, there are good reasons to require the trespasser seeking an equitable easement to prove that she will suffer a *greatly disproportionate* hardship from denial of the easement than the owner will from its grant.

First and most fundamentally, courts first crafted equitable easements to prevent a property owner inconvenienced to a "minor degree" by a trespass from nevertheless engaging in "legal extortion" against an innocent trespasser by demanding an exorbitant sum in exchange for not filing suit to enjoin the trespass. (*Christensen*, *supra*, 114 Cal.App.2d at p. 560.) This danger of "legal extortion" is greatest where the cost of ceasing the trespass is highest—that is, when the hardship on the trespasser is greatly disproportionate to the hardship on the owner—because the trespasser in that situation cannot easily avoid the "legal extortion" by ceasing the trespass on her own. This is no doubt why equitable easements have thus far been granted in cases involving permanent physical encroachments such as buildings (*D'Andrea v. Pringle* (1966) 243 Cal.App.2d 689, 695; *Brown Derby Hollywood Corp. v. Hatton* (1964) 61 Cal.2d 855, 858; *Morgan v. Veach* (1943) 59 Cal.App.2d 682, 688-689; *Christensen*, at pp. 555-556 [garage and driveway]; *Dolske v. Gormley* (1962) 58 Cal.2d 513, 520 [porch pillar and roof eaves]

4

(*Dolske*)), walls (*Hirschfield v. Schwartz* (2001) 91 Cal.App.4th 749, 756 (*Hirschfield*)), reservoirs (*Ukhtomski v. Tioga Mutual Water Co.* (1936) 12 Cal.App.2d 726, 728), and utility lines (*Field-Escandon v. DeMann* (1988) 204 Cal.App.3d 228, 237 [sewer lines]; *Hirschfield*, at p. 756 [underground water and electrical lines]; *Dolske*, at p. 524 [gas pipes and meters]), as well as in cases involving intermittent trespasses necessary to access landlocked parcels of property (*Tashakori*, *supra*, 196 Cal.App.4th at p. 1007; *Miller v. Johnston* (1969) 270 Cal.App.2d 289, 305 (*Miller*); *Linthicum*, *supra*, 175 Cal.App.4th at p. 259; *Donnell v. Bisso Bros.* (1970) 10 Cal.App.3d 38, 46 (*Donnell*)).[1]

Second, equitable easements give the trespasser "what is, in effect, the right of eminent domain by permitting him to occupy property owned by another." (*Christensen*, *supra*, 114 Cal.App.2d at p. 560; *Donnell*, *supra*, 10 Cal.App.3d at p. 46.) Such a right is in tension with the general constitutional prohibition against the taking of private property. (U.S. Const., 5th Amend. ["private property" "shall" not "be taken for public use, without just compensation"]; Cal. Const., art. I, § 19, subd. (a) [same]; *Miller*, *supra*, 270 Cal.App.2d at 305 [so noting].) This is why courts approach the issuance of equitable easements with "an abundance of caution" (*Linthicum*, *supra*, 175 Cal.App.4th at p. 269), and resolve all doubts against their issuance (*Christensen*, at p. 562). It also explains why there must be a showing that the hardship on the trespasser be greatly disproportionate to the hardship on the owner. To allow a court to reassign property rights on a lesser showing is to dilute the sanctity of property rights enshrined in our Constitutions.

Lastly, the requirement that the trespasser establish a greatly disproportionate hardship properly narrows and focuses the universe of considerations relevant to the

---

**1** This latter use of the equitable easement doctrine is not to be confused with a court's separate but narrower power to establish an "easement by necessity." An "easement by necessity" allows for the creation of an easement that provides access to a landlocked parcel over a neighboring parcel, but only if (1) the two parcels were once commonly owned, (2) an access road is "strict[ly] necess[ary]," and (3) the prior, common owner never evinced an intent *not* to have an access road. (*Murphy v. Burch* (2009) 46 Cal.4th 157, 164-165.)

issuance of an equitable easement—namely, whether the burden on the trespasser in ceasing the trespass is so greatly disproportionate to the burden on the property owner from the loss of use of the trespassed-upon property that the courts should make an exception to the general rules of property ownership and require the owner to accept damages instead of reclamation of her own land. This focus precludes a more open-ended and free-floating inquiry into which party will make better use of the encroached-upon land, which values it more, and which will derive a greater benefit from its use.

In this case, the hardship Zacarias would suffer in spending less than $300 to remove her patio furniture from Shoen's property (and to have a stairway that leads to her neighbor's property) is not greatly disproportionate to the hardship Shoen would suffer in losing the use of land that she owns. The hardship to Zacarias in this case is nothing like the hardships to trespassers who would be forced to move buildings or be airlifted to their landlocked property. At most, Zacarias loses the benefit of her use of the patch of land, but "[d]eprivation of a substantial benefit . . . falls short of the imposition of a substantial hardship." (*Fairrington v. Dyke Water Co.* (1958) 50 Cal.2d 198, 200; *Hirschfield*, *supra*, 91 Cal.App.4th at p. 760.) On these facts, we conclude as a matter of law that the hardship on Zacarias in this case was not greatly disproportionate to the hardship on Shoen.[2] The trial court's grant of an equitable easement must accordingly be reversed and remanded for litigation of the parties' remaining claims.

Shoen invites us to reach out and dismiss Zacarias's counterclaim for prescriptive easement on the ground that Zacarias's exclusive use of the patch precludes a prescriptive easement. Prescriptive easements require proof of "'open, notorious, continuous, and adverse'" use of land "'for an uninterrupted period of five years.'" (*Pulido v. Pereira* (2015) 234 Cal.App.4th 1246, 1250.) However, the trial court made no factual findings regarding these elements, and we leave it to the trial court on remand to do so and when it does so, to consider Shoen's challenges to Zacarias's prescriptive easement claim.

---

**2**      This conclusion obviates the need to discuss whether Zacarias established the other elements of her equitable easement claim.

6

## DISPOSITION

The judgment is reversed and the case is remanded for further proceedings on the remaining claims and counterclaims.  Costs are awarded to Shoen.

**<u>CERTIFIED FOR PUBLICATION.</u>**


_____, J.

      HOFFSTADT

We concur:


_____, P. J.

     BOREN


_____, J.

   ASHMANN-GERST