Filed 8/28/25  Formby v. Haubold CA1/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| DOUGLAS FORMBY et al., <br><br> Plaintiffs and Respondents, <br><br> v. <br><br> PETER HAUBOLD et al., <br><br> Defendants and Appellants. | A168815 <br><br> (Marin County <br> Super. Ct. No. CIV2103050) |

## INTRODUCTION

If good fences make good neighbors, a fence that misrepresents a property line risks the opposite result.  Defendants Peter and Cynthia Haubold appeal from a judgment quieting title to a portion of a residential lot owned by their immediate neighbors, plaintiffs Douglas and Heather Formby.[1]  Although surveys show that plaintiffs own the area in question, it lies on defendants' side of a fence between the properties, and defendants have long used it as a patio.  The trial court rejected defendants' claim to an equitable easement, as well as their defense of unclean hands.  Finding no abuse of discretion, we affirm.

---

[1] Because the two plaintiffs share the same last name, as do the two defendants, we occasionally refer to them by first name for the sake of clarity. We intend no disrespect to the parties.

1

**FACTUAL AND PROCEDURAL BACKGROUND**

*Defendants' Use of Plaintiffs' Property*

Defendants bought a property at 20 Olive Avenue in Larkspur (20 Olive) in 2012 and have lived there ever since. When they bought their home, a fence ran along what they assumed was the boundary between 20 Olive and an adjacent property, 16 Olive Avenue (16 Olive). Defendants' backyard featured a gravel patio abutting the fence between the properties. Defendants later replaced the gravel with pavers, placed furniture there, and repaired the retaining wall on the edge of the patio.

Plaintiffs bought 16 Olive in February 2021, intending to use the property as a "legacy home" for their family. Their property is narrow and deep and, when they bought it, contained a main residence that needed extensive repairs, a detached garage, and a dilapidated building in the rear. Around April of the same year, plaintiffs hired an architect who advised them that it would be very expensive to repair the house, and it would make more " 'economic sense' " to rebuild it.

The architect also showed plaintiffs a survey indicating that a portion of their property extended past the fence they shared with 20 Olive. Specifically, rather than running in a straight line, the boundary between the two properties has a roughly rectangular "cut-out" area in the middle, protruding from defendants' property into plaintiffs'. Rather than tracing all the right angles of this property line, the fence runs diagonally from one corner of the "cut-out" almost to Olive Avenue, creating a triangular section of approximately 482 square feet that belongs to plaintiffs but is on defendants' side of the fence. This is the area that defendants used as their patio, and it is the area in dispute.

Plaintiffs' architect testified that, even within the true property lines, it would be "challenging" to design a house for plaintiffs' long, narrow, and steep lot. The fence line narrows the property further, and the architect opined the additional width would be "critical" to the success of the project design. When Heather Formby saw a proposed design from an architect hired by defendants, using the existing fence line as the boundary, she found the design unacceptably narrow.

## This Action

After a brief and unsuccessful effort to resolve the matter amicably, plaintiffs brought this action against defendants. It appears plaintiffs alleged causes of action for trespass, nuisance, quiet title, and declaratory and injunctive relief, and defendants asserted the affirmative defenses of equitable easement and unclean hands.[2] These defenses underlie defendants' arguments on appeal.

### Equitable Easement

As to the alleged equitable easement, defendants argued as follows: They bought their property in the reasonable belief that the patio area belonged to them, and their family has used it continuously ever since as their outdoor space; plaintiffs were looking for a family home rather than a "fixer upper," according to their real estate agent, which meant plaintiffs did not originally intend to expand their existing house; plaintiffs could build a larger house than they propose without using the disputed area; and defendants' property value would diminish by roughly $160,000, while

---

[2] The appellant's appendix contains neither the complaint, the answer, nor the register of actions. (Cf. Cal. Rules of Court, rules 8.122(b)(1)(F), 8.124(b)(1)(A) & (B).)

3

plaintiffs would face little to no hardship from losing the disputed area. We will discuss this evidence, as well as contrary evidence, in more detail below.

*Unclean Hands*

To support their defense of unclean hands, defendants relied heavily on a series of disputes between the parties that arose after the property-line discrepancy was discovered. For instance, plaintiffs initially suggested a "land swap" with defendants, only to withdraw the offer a few days later. Shortly afterward, Douglas Formby sent his father an email saying, "I don't see any way that this ends without [Peter Haubold] being super bitter," to which his father suggested he "[t]each [Peter] a lesson," an exchange that, according to defendants, shows plaintiffs designed their new home with the "express purpose" of making defendants bitter. Defendants pointed to face-to-face disputes, including evidence that Douglas Formby—who they assert is younger and stronger than Peter Haubold—told Peter he could simply tear down the fence and charge them for replacing it, and that he "could come through your gate at any time and walk up your steps and have a drink on your patio area, and that would be completely in my legal right." Defendants drew the trial court's attention to evidence—in the form of pictures and observations made when the judge visited the site—that plaintiffs in fact removed a portion of the fence. And they showed that in February 2022, Heather Formby contacted the police and sought to have Peter Haubold arrested for removing survey monuments, an offense allegedly punishable under Penal Code section 605. Finally, unrelated to the disputed area, plaintiffs had carried out unpermitted work in their back yard.

**The Trial Court's Ruling**

After a bench trial, the court ruled against defendants on all three elements of an equitable easement, concluding that (1) they were negligent in

4

believing they owned the disputed area; (2) an easement would cause plaintiffs "irreparable harm" because of the limitations it would place on the design of the new house they planned to build; and (3) the resulting harm to plaintiffs would "significantly outweigh[]" the harm defendants would face by removing their patio. Without providing additional detail, the court also rejected the unclean hands defense, finding it "not supported by the record." The court ruled in plaintiffs' favor on their causes of action for quiet title and declaratory relief, and ordered the encroachments removed, with plaintiffs to bear the costs of removal.

## DISCUSSION

### I. Appealability

We first address a threshold matter. Defendants tell us their appeal is authorized by section 904.1, subdivision (a)(1) of the Code of Civil Procedure because it is from a final judgment. The notice of appeal in this case is from a document filed August 9, 2023, entitled "Final Statement of Decision and Judgment." (Capitalization and boldface omitted.) Despite its title, the document by its terms contemplates further action by the parties and the court. That is, it orders the parties within 15 days either to submit a joint proposed judgment or, if unable to agree on a joint proposed judgment, each to submit their own proposed judgment and any objections to that of the other parties. (See *Dana Point Safe Harbor Collective v. Superior Court* (2010) 51 Cal.4th 1, 5 [decree is not final if it requires anything further in the nature of judicial action].) However, plaintiffs have informed us, and defendants do not dispute, that no subsequent judgment was entered, and plaintiffs urge us to treat the August 9, 2023 statement of decision as appealable so as to avoid delay in resolving this appeal.

5

Our high court has explained that "[r]eviewing courts have discretion to treat statements of decision as appealable when they must, as when a statement of decision is signed and filed and does, in fact, constitute the court's final decision on the merits," and no formal judgment is later entered. (*Alan v. American Honda Motor Co., Inc.* (2007) 40 Cal.4th 894, 901.) The statement of decision does not appear to leave any unresolved questions on the merits of this action. In the circumstances, we exercise our discretion to treat the August 9, 2023 document as a final judgment and proceed to consider the appeal.

## II.    Equitable Easement

Defendants argue that the trial court abused its discretion by declining to grant them an equitable easement. According to defendants, the court failed to consider factors favoring such an easement, including evidence that defendants encroached on the land innocently and that plaintiffs would not be harmed by the loss of the disputed area, while defendants would suffer the loss of their outdoor space and diminution in the value of their property.

### *Legal Standards*

In limited circumstances, a court has discretionary authority to "deny a landowner's request to eject a trespasser and instead force the landowner to accept damages as compensation for the judicial creation of an easement." (*Shoen v. Zacarias* (2015) 237 Cal.App.4th 16, 19 (*Shoen*).) To establish an equitable easement, a party must show three things: "the trespass was ' " 'innocent' " ' rather than " 'willful or negligent' " '; the easement will not cause irreparable injury to the public or the property owner; and the hardship to the trespasser from denying the easement is ' " ' "greatly disproportionate" ' " ' to the property owner's from continuance of the easement." (*Wang v. Peletta* (2025) 112 Cal.App.5th 478, 491 (*Wang*).) A

6

court does not have the discretion to grant an equitable easement unless all three prerequisites have been established. (*Ibid.*) Courts approach equitable easements "with '[a]n abundance of caution' [citation], and resolve all doubts against their issuance." (*Shoen, supra,* 237 Cal.App.4th at p. 21.)

We review the trial court's findings of fact for substantial evidence and its decision whether to grant an easement for abuse of discretion. (*Wang, supra,* 112 Cal.App.5th at p. 491.) Under this standard, "we resolve all evidentiary conflicts in favor of the judgment and determine whether the court's decision ' "falls within the permissible range of options set by the legal criteria." ' " (*Hirshfield v. Schwartz* (2001) 91 Cal.App.4th 749, 771 (*Hirshfield*).)

### *Innocence*

It is generally thought that to satisfy the innocence requirement, defendants' use of the disputed area " ' "must not be willful or negligent." ' " (*Hansen v. Sandridge Partners, L.P.* (2018) 22 Cal.App.5th 1020, 1028 (*Hansen*).) There is some authority for the proposition that mere negligence may not bar an equitable easement. (*Linthicum v. Butterfield* (2009) 175 Cal.App.4th 259, 266 (*Linthicum*); but see *Hansen, supra,* 22 Cal.App.5th at p. 1028, fn. 10 [disagreeing with *Linthicum* and noting that "[m]ore recent equitable easement cases have dropped the equivocal language"].) But even if that is the case, whether "the quantum of the defendant's negligence is so great as to justify an injunction is a matter best left to the sound discretion of the trial court." (*Linthicum, supra,* at p. 267.)

In finding defendants' use of the disputed area was not innocent, the trial court relied on three facts indicating defendants had reason to believe the fence might not reflect the property line. First, when defendants bought their home in 2012, the sellers notified them of a boundary discrepancy with

7

the property to the rear of 20 Olive, putting them on notice of at least one boundary issue. Second, in the same year, defendants hired a sewer repair company that prepared a map showing not only the sewer line but also the boundary line between the two properties, complete with sharp right turns inconsistent with the fence line. Third, defendants knew that survey monuments were placed in the disputed area in 2019, when the prior owners of 16 Olive carried out a survey. In addition, plaintiffs point to evidence that a plat map attached to the preliminary title report, which Peter Haubold reviewed when defendants bought the property, showed the true property line.

Defendants argue these facts were insufficient to alert them to the boundary problem, and they draw our attention instead to evidence supporting their position. For instance, they and their rear neighbor split the cost of repairing their shared fence, leaving it where it was; and after completing the 2019 survey, the prior owners of 16 Olive did not notify defendants of the boundary problem now before us. As to the anomaly in the plat map, Peter Haubold testified he saw it but assumed that the sharp "jag-out" in the property line represented the patio area. He also testified that he saw the anomaly again on the sewer company's map, but again assumed it was the patio and thought little of it.

Defendants also cite cases, but their authority is of limited value because the cases involve appellate courts finding no abuse of discretion when a trial court has *granted* an equitable easement. For instance, in *Hinrichs*, the appellate court found no abuse of discretion where the trial court granted an equitable easement in favor of a landlocked landowner who believed he had a right-of-way over a trail. (*Hinrichs v. Melton* (2017) 11 Cal.App.5th 516, 519, 523 (*Hinrichs*); see also *Tashakori v. Lakis* (2011) 196

8

Cal.App.4th 1003, 1006–1007 (*Tashakori*) [affirming equitable easement where prepurchase misrepresentations by real estate broker, prior owner, and title report led landlocked landowner to believe a recorded easement would allow use of shared driveway to access public road]; *Hirshfield, supra*, 91 Cal.App.4th at pp. 755, 772 [affirming equitable easement where parties wrongly assumed chain-link fence marked property line].)  But the question we must address "is not whether the trial court could properly have *granted* an equitable easement, but whether it acted within the scope of its discretion in *denying* it, an inquiry in which we presume the judgment is correct and resolve all ambiguities in favor of affirmance."  (*Wang, supra*, 112 Cal.App.5th at p. 492.)  Even if the evidence is less than overwhelming that defendants' use of the disputed area was not innocent, we cannot say the trial court's finding on this issue was an abuse of its discretion.

In any event, as we shall explain, the trial court's additional findings were supported by the record and well within its discretion.

### Irreparable Harm

The court found that plaintiffs would face irreparable harm from an easement.  Specifically, the court found plaintiffs had always planned to improve the property and bought it in the hope of building a legacy property for their family; that their plans would be " 'severely limited' " by not including the disputed area in their design calculations; and that they would not be able to realize their property's highest and best use without that area.

In this context, the requirement of " '[i]rreparable harm' " does not refer to " 'injury beyond the possibility of repair or beyond possible compensation in damages' "; rather, it may be satisfied by " ' "[a] trespass of a continuing nature, whose constant recurrence renders the remedy at law inadequate," ' " or to wrongs that cause damages " ' "estimable only by

9

conjecture and not by any accurate standard." ' " (*Donahue Schriber Realty Group, Inc. v. Nu Creation Outreach* (2014) 232 Cal.App.4th 1171, 1184; see *Nellie Gail Ranch Owners Assn. v. McMullin* (2016) 4 Cal.App.5th 982, 1006 (*Nellie Gail*) [in second step of analysis, court may consider whether monetary damages would be adequate].)

Substantial evidence supports the trial court's findings. Heather Formby testified that when she and her husband bought 16 Olive they wanted a "legacy home" that they could pass on to their children. Douglas Formby testified that the main house on the property was in poor condition when they bought it, and they knew it would need repairs. Their architect soon advised them it would make better sense to rebuild than to repair. According to the architect, it would be challenging to design a house on the narrow lot, even assuming plaintiffs could use the disputed area, and the extra property width was "critical" to the success of the project.

In challenging the trial court's finding, defendants point to *other* evidence suggesting it would be possible to build a home within the existing fence line that would be larger than the home plaintiffs' architect designed. They also point to plaintiffs' real estate agent's testimony that plaintiffs were not looking for a "fixer upper," which defendants argue shows that plaintiffs originally planned to live in the existing house rather than build a new one. But this evidence, even if credited, does not detract from the basic point that, once plaintiffs decided to rebuild the home, being able to use the full extent of their property would enable them better to design the home they wished to build. To prevail on irreparable harm, defendants must do more than point to evidence that bolstered their case at trial—they must show that there is no substantial evidence for the court's findings. (See *Nellie Gail, supra,* 4 Cal.App.5th at p. 1006.) Even without a dollar value on the harm to

10

plaintiffs from not being able to build on the full extent of their property, there is substantial evidence of irreparable harm to them here.

### Balancing Hardships

The trial court also found that on balance, the harm to defendants from removing the encroachments would not outweigh the harm plaintiffs would suffer from losing the exclusive use of their property. In reviewing this finding, we bear in mind that in this balancing, the hardships between the trespasser and the landowner are not treated as starting out in "equipoise," but rather "they begin tipped in favor of the property owner[s] due to the owner[s'] substantial interest in exclusive use of [their] property arising solely from [their] ownership of [their] land." (*Shoen*, *supra*, 237 Cal.App.4th at p. 20.) Thus, courts should give "additional weight" to the inherent hardship in an owner's "loss of the exclusive use" of the property, "independent of any hardship caused by the owner's loss of specific uses in a given case," and deny the easement unless the hardship to the trespasser is "greatly disproportionate" to that of the landowner. (*Id*. at p. 21.)

As the trial court acknowledged, defendants will lose the use of their patio, and there is evidence that loss of the disputed area will diminish the value of their property by $160,000. But " '[d]eprivation of a substantial benefit . . . falls short of the imposition of a substantial hardship' " (*Shoen*, *supra*, 237 Cal.App.4th at p. 22), and denial of the easement does not interfere with defendants' use of the property they actually own, nor does it require the destruction of any building. (See *ibid*. [hardship to party who would have to remove patio furniture was "nothing like the hardships to trespassers who would be forced to move buildings or be airlifted to their landlocked property"]; see also *Hinrichs*, *supra*, 11 Cal.App.5th at p. 524 [landlocked parcel]; *Linthicum*, *supra*, 175 Cal.App.4th at p. 265, 267 [same];

11

*Tashakori*, *supra*, 196 Cal.App.4th at pp. 1005, 1009–1010 [same].) And the trial court has ordered plaintiffs to bear the cost of removing the encroachments and replacing the fence around the disputed area. We cannot say that it was an abuse of discretion for the trial court to find that the harm to defendants was not "greatly disproportionate" to the harm plaintiffs would suffer from the loss of exclusive use of their property and the concomitant restrictions on the house they wish to build. (See *Shoen*, *supra*, 237 Cal.App.4th at pp. 21–22.)

On appeal, defendants reassert the same points the court rejected at trial: that loss of the disputed area would cause them significant hardship through loss of use of the patio area and diminution in the value of their property, while plaintiffs face no harm because they learned of the disputed area only after buying their property. But the law on equitable easements does not turn on whether a landowner was previously aware of the location of a property line, nor on whether the landowner previously intended to repair, rather than replace, an existing structure. And again, our inquiry is not whether evidence might have supported a different decision; rather we resolve all evidentiary conflicts in favor the judgment and determine whether the court's decision falls within the permissible range of options. (*Wang*, *supra*, 112 Cal.App.5th at p. 491; *Hansen*, *supra*, 22 Cal.App.5th at p. 1028; *Hirshfield*, *supra*, 91 Cal.App.4th at p. 771.) We are satisfied that substantial evidence supports the court's findings, and that there was no abuse of discretion in its balancing of the hardships.

## III.    Unclean Hands

Defendants also contend the trial court abused its discretion in declining to apply the doctrine of unclean hands, which requires a plaintiff in an equitable action to "come into court with clean hands," or "be denied relief,

regardless of the merits of [the] claim." (*Aguayo v. Amaro* (2013) 213 Cal.App.4th 1102, 1110 (*Aguayo*).)

The unclean hands defense applies only if the inequitable conduct "occur[red] in the transaction to which the relief sought relates." (*O'Flaherty v. Belgum* (2004) 115 Cal.App.4th 1044, 1060.)  That is, the connection between " 'the misconduct and the claimed injuries' " must be direct, such that the plaintiff " ' " 'prejudicially affect[ed] . . . the rights of the person against whom the relief is sought so that it would be inequitable to grant such relief." ' ' " (*Kendall-Jackson Winery, Ltd. v. Superior Court* (1999) 76 Cal.App.4th 970, 979 (*Kendall-Jackson Winery*).)  For example, in a quiet title action based on adverse possession, relief was appropriately denied where the plaintiff deceitfully recorded a "wild deed" intended to "interfere with the true owner's payment of property taxes" and allow the plaintiff to satisfy one of the elements of adverse possession. (*Aguayo, supra*, 213 Cal.App.4th at p. 1112.)

To establish unclean hands, defendants rely on evidence they contend shows plaintiffs behaved "aggressively" in asserting their claim to the disputed area *after* the dispute between the parties arose—such as making comments defendants construed as threatening and making a police report— as well as evidence that plaintiffs performed unrelated work on their property without a permit.  But this behavior had no effect on the right defendants assert, which, if it exists at all, is based on events that occurred before plaintiffs bought the property at 16 Olive.  Nor have defendants shown plaintiffs' behavior frustrated their efforts to mount a defense to this action. They have not shown the allegedly inequitable behavior affected their rights or their ability to protect those rights, and thus have not established an

13

unclean hands defense.  (See *Kendall-Jackson Winery*, *supra*, 76 Cal.App.4th at pp. 978–979.)

We recognize the hostility that developed between plaintiffs and defendants, but the "equitable easement doctrine is not a tool for penalizing unneighborly conduct through the reassignment of property interests." (*Shoen*, *supra*, 237 Cal.App.4th at p. 22.)  The trial court did not abuse its discretion by rejecting the defense of unclean hands.

**IV.    Motion to Dismiss and Motion for Sanctions**

Plaintiffs have moved to dismiss this appeal on multiple grounds:  that the appeal is frivolous and intended primarily to delay the loss of defendants' patio; that defendants' briefs contain misstatements of fact and refer to facts not in the record; and that defendants' briefs and appendix contain other irregularities.  Plaintiffs also point to defendants' allegedly wrongful conduct in continuing to use the patio during the pendency of this appeal without having paid an undertaking.  (See Code Civ. Proc., § 917.4.)  Plaintiffs have also requested sanctions against defendants and their counsel for bringing a frivolous appeal, which has forced them to delay building their house and resulted in substantial appellate attorney fees.  Defendants did not file any opposition to these motions.  Nevertheless, we decline to grant them.

We have discretion to dismiss a frivolous appeal.  (*Kinney v. Clark* (2017) 12 Cal.App.5th 724, 732.)  An appeal is frivolous only " 'when it is prosecuted for an improper motive—to harass the respondent or delay the effect of an adverse judgment—or when it indisputably has no merit—when any reasonable attorney would agree that the appeal is totally and completely without merit." (*Ibid.*)  An appeal's "total lack of merit" may be treated as evidence it was intended only for delay.  (*In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 649 (*Flaherty*).)

We similarly have discretion to impose sanctions for bringing a frivolous appeal. (*Champlin/GEI Wind Holdings, LLC v. Avery* (2023) 92 Cal.App.5th 218, 227.) However, "sanctions should be 'used most sparingly to deter only the most egregious conduct' [citation], and that an appeal lacks merit does not, alone, establish it is frivolous." (*In re Marriage of Gong & Kwong* (2008) 163 Cal.App.4th 510, 518.)

We note the flaws in defendants' briefing and appendix. Most significantly, defendants engage only nominally with the stringent standard of review here and instead seek to relitigate the facts. In addition, defendants' briefs lack record citations for many factual assertions, and some assertions are not fully supported by the cited portions of the record. We remind defendants' counsel of his obligation to ensure that briefs and appendices comply with the California Rules of Court (see Cal. Rules of Court, rules 8.122(b)(1), 8.124(b)(1), 8.204(a)), but in the exercise of our discretion, we decline to dismiss the appeal or impose sanctions. " '[T]he borderline between a frivolous appeal and one which simply has no merit is vague,' " and we must police that line in a manner that avoids a "chilling effect on the assertion of litigants' rights on appeal." (*Flaherty*, *supra*, 31 Cal.3d at p. 650.)

## DISPOSITION

The motions to dismiss the appeal and to impose sanctions are denied. The judgment is affirmed. Plaintiffs shall recover their costs on appeal.

TUCHER, P. J.

WE CONCUR:

PETROU, J.
RODRÍGUEZ, J.

*Formby et al. v. Haubold et al.* (A168815)

15